IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCANSAFE, INC. and<br>SCANSAFE LTD.,<br><br>        Plaintiffs,<br><br>        v.<br><br>MESSAGELABS GROUP LTD.,<br>MESSAGELABS INC., and<br>BENJAMIN WHITE,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No.: 06-_____<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT

Plaintiffs ScanSafe, Inc. and ScanSafe Ltd. (collectively "ScanSafe"), by and through their counsel, for their Complaint against MessageLabs Group Ltd., MessageLabs Inc. (MessageLabs Group Ltd. and MessageLabs Inc. collectively "MessageLabs") and Benjamin White ("White") (MessageLabs and White collectively "Defendants"), demand a trial by jury on all issues so triable and allege, upon knowledge as to ScanSafe's own acts and upon information and belief as to the acts of others, as follows:

### THE PARTIES

1. ScanSafe, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1209 Orange Street, Wilmington, Delaware 19801.

2. ScanSafe Ltd. is a corporation organized and existing under the laws of England, with its principal place of business at 4th Floor, The Connection, 198 High Holborn, London WC1V 7BD, UK. ScanSafe Ltd. is a wholly owned subsidiary of ScanSafe, Inc.

3. MessageLabs Group Ltd. is a company organized and existing under the laws of England, with a principal place of business at 1270 Lansdowne Court, Gloucester Business Park, Gloucester GL3 4AB, UK.

4. MessageLabs Inc. is a company organized and existing under the laws of the State of Delaware, with a principle place of business at 512 7th Ave, 6th Fl., New York, NY 10018.

5. Benjamin White is an individual who resides at Beaufort House, West Approach Drive, Cheltenham, Gloucestershire GL52 3AD, UK.

## NATURE OF ACTION

6. This is a civil action for infringement arising under the copyright laws of United States, 17 U.S.C. §§ 101 *et seq.*, and for related acts of unfair competition and false advertising arising under the Lanham Act, §§ 1051 *et seq.*, and under Delaware statutory and common law, for deceptive trade practices and for breach of fiduciary duties and misappropriation of corporate opportunities.

## JURISDICTION AND VENUE

7. This Court has exclusive jurisdiction over the federal copyright and unfair competition claims pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over any related state-law claim pursuant to 28 U.S.C. § 1367.

8. The Court has jurisdiction over Defendants and venue is properly laid in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Defendants regularly transact business in this District, or committed the tortious acts complained of herein within this District, which acts have caused injury to ScanSafe within this District, or are Delaware corporations residing in this District.

## BACKGROUND

9. Since, 1999 ScanSafe has offered services for companies using the Internet. Originally offering services for the corporate email market, ScanSafe's emphasis shifted to Internet security in 2003, in particular a system of Internet security scanning services that companies use to prevent access to pornography and any other damaging or illegal Internet content, to block malware (e.g., viruses, spyware, adware), and to control access to the Internet by their employees. ScanSafe refers to these aforementioned services as its "Web Security Service."

10. ScanSafe's Web Security Service is customizable without requiring the client to install any hardware and requiring only minimal software configuration by the client. This is achieved through ScanSafe's use of state of the art high speed scanning software operated offsite at ScanSafe's very large data centers. Rather than install software at the client to scan Internet traffic, ScanSafe's clients' computers are configured to redirect all Internet traffic through the ScanSafe data centers. In that way, the whole scanning process is carried out off-site, minimizing the risk to the ScanSafe client of potential damaging content reaching its computers and reducing the costs and resources the client needs to spend on Internet security generally. ScanSafe was the first company in the world to offer this service.

11. ScanSafe's services address a major problem for most corporations of having uncontrolled or vulnerable access to the Internet. ScanSafe's services also address a fundamental problem for most current scanning technology; scanning all Internet traffic can create an unacceptable delay on the load times of web pages. In particular, even a one- second delay for Internet traffic, such as loading a webpage, is considered unacceptable by most users used to the rapid page downloads offered by broadband connections.

12. Recognizing the need to address the delay occasioned by competitive off-site scanning systems, after several years of intensive development, ScanSafe devised a way of scanning Internet traffic with only an imperceptible delay to the client. ScanSafe launched its groundbreaking Web Security Service at the end of 2003, which has since grown to be the largest fully managed web security service available anywhere in the world.

### SCANSAFE'S RELATIONSHIP WITH MESSAGELABS

13. MessageLabs currently offers a service used for email and web page security scanning, as described in detail on the MessageLabs website, www.messagelabs.com. Prior to its relationship with ScanSafe, MessageLabs only provided email security solutions.

14. ScanSafe and MessageLabs first entered into a contractual relationship in 2002, when MessageLabs agreed to sell ScanSafe's email branding services and also became a minority shareholder in ScanSafe. Later in 2003, MessageLabs contracted with ScanSafe to develop content filtering tools in relation to MessageLabs' email security service. In 2004, ScanSafe entered a reseller agreement with one of MessageLab's subsidiaries, Star Internet, to provide the ScanSafe Web Security Service for Star's customers.

15. In 2005, MessageLabs, desiring to provide a "one stop shop" for Internet and email security, entered into a reseller agreement ("Reseller Agreement") with ScanSafe to resell ScanSafe's Web Security Service directly and through MessageLabs' re-sellers. Because MessageLabs desired to brand the Web Security Service with its own trademarks, ScanSafe agreed to structure the agreement as a "White Label Service" and allow MessageLabs to rebrand the Web Security Service subject to certain restrictions set forth in the Reseller Agreement.

16. MessageLabs acted purely as a reseller for and did not provide any significant aspect of the Web Security Service. MessageLabs merely acted as first point of call for customers and linked the ScanSafe Web Security Service to MessageLabs' interface for its own

email security service. The customers' Web traffic was scanned through ScanSafe's data centers using ScanSafe's technology. However, because the MessageLabs service was a White Label Service, its customers generally did not know the identity of the creator and supplier of their web security service, namely ScanSafe.

17. During the course of the relationship and subject to certain confidentiality restrictions, ScanSafe shared technical manuals and other know how with MessageLabs to aid MessageLabs in reselling the White Label Service and configuring customers' networks to work with the Service.

### BENJAMIN WHITE'S UNLAWFUL ACTIVITIES

18. Benjamin White is founder of MessageLabs and was its CEO and subsequently its Chief Strategy Officer. In December 2004, White became a director on the Board of Directors of ScanSafe, Inc. White remained a director of ScanSafe until terminated in May 2006. As a director, White was privy to confidential information about the Web Security Service. White attended several Board meetings, was given information pertaining to ScanSafe's business and marketing plans, and confidential technical information pertaining to its services and future development plans.

19. Concurrently with his tenure as a director and in breach of his fiduciary duties to ScanSafe, Mr. White worked as CEO of MessageLabs in developing a competing service to the Web Security Service. At no point during any of the Board meetings or otherwise did Mr. White indicate that MessageLabs was planning on launching its own competing service. Further, at no point did Mr. White present to any ScanSafe employee, officer, or director any opportunity to expand its current Web Security Service.

20. Mr. White unlawfully used ScanSafe's confidential information obtained by virtue of his position as a director to benefit his own company, MessageLabs.

## MESSAGELABS' UNLAWFUL ACTIVITIES

21.     In early 2006, ScanSafe became aware through market rumors that MessageLabs intended to develop a competing service. When ScanSafe raised the issue of the competing service in February 2006, MessageLabs denied any intention to launch a competing service. Despite the denial, on April 30, 2006, MessageLabs gave notice of its intention to provide a competing service. MessageLabs officially launched its own competing service on July 3, 2006 although it commenced marketing its service at an earlier date.

22.     Since April 2006, several ScanSafe customers have informed ScanSafe that they were told by representatives of MessageLabs that it was launching a new version of its service. According to the customers, "Version 2" of the MessageLabs service would be available soon.

23.     MessageLabs has been providing potential customers and its own resellers with a document comparing what it calls "Version 1" of its software (namely the ScanSafe White Label Service) to Version 2, the competing service MessageLabs plans to launch. Instead of complying with its duties to promote ScanSafe's White Label Service under the Reseller Agreement, MessageLabs has improperly taken advantage of the goodwill built up from ScanSafe's existing service by implying Version 2 is an upgrade of or the next version of ScanSafe's Web Security Service.

24.     MessageLabs has created a competing service based in part upon ScanSafe's copyrighted and proprietary documents and technology. MessageLabs had made several marketplace statements to customers misrepresenting ScanSafe's White Label Service and MessageLabs' competing service.

## COUNT ONE – BREACH OF FIDUCIARY DUTY

25.     ScanSafe repeats and realleges the allegations of paragraphs 1 through 24 as if set forth herein.

26. This cause of action for breach of fiduciary duty arises under the common law of the State of Delaware.

27. In his position as a director of ScanSafe, White owed ScanSafe a fiduciary duty of loyalty and trust.

28. White breached his fiduciary duty to ScanSafe in that, while a director, he took and retained confidential and proprietary information for the benefit of himself and his own company, MessageLabs, and planned to deprive ScanSafe of the benefits of its confidential information, trade secrets and intellectual property.

29. As a consequence of White's aforesaid actions, ScanSafe has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

30. White's aforesaid actions are irreparably harming ScanSafe and, thus, should be enjoined.

## COUNT TWO – MISAPPROPRIATION OF CORPORATE OPPORTUNITY

31. ScanSafe repeats and realleges the allegations of paragraphs 1 through 30 as if set forth herein.

32. This cause of action for breach of a fiduciary duty by misappropriating a corporate opportunity arises under the common law of the State of Delaware.

33. In his position as a director of ScanSafe, White owed ScanSafe a duty of loyalty.

34. White breached his fiduciary duty to ScanSafe in that, while a director, he presented his own company MessageLabs with a business opportunity to develop a fully managed web security service without ever presenting ScanSafe, his fellow board members, or the officers of ScanSafe with the business opportunity. White misappropriated a corporate opportunity of which ScanSafe has an interest and expectancy, directly in ScanSafe's line of business, of which ScanSafe would have been able to exploit the opportunity. Moreover, White

further embarked ScanSafe's confidential information in order to acquire the business opportunity. White's actions in taking the corporate opportunity for his own, placed him in a position inimical to his duties to ScanSafe.

35. As a consequence of White's aforesaid actions, ScanSafe has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

36. White's aforesaid actions are irreparably harming ScanSafe and, thus, should be enjoined.

### COUNT THREE – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

37. ScanSafe repeats and realleges the allegations of paragraphs 1 through 36 as if set forth herein.

38. This cause of action for aiding and abetting breach of fiduciary duty arises under the common law of the State of Delaware.

39. During the time Benjamin White was a fiduciary of ScanSafe, MessageLabs and Benjamin White knowingly and jointly created a competing service based on ScanSafe's copyrighted and proprietary technology and decided to market this service as its own rather than as a service of ScanSafe.

40. As a result of its aiding and abetting Benjamin White's breaches of fiduciary duty, MessageLabs has been unjustly enriched.

41. As a consequence of MessageLabs' actions, ScanSafe has suffered and will continue to suffer substantial damages in an amount to be proven at trial.

42. MessageLabs' aforesaid actions are irreparably harming ScanSafe and, thus, should be enjoined.

## COUNT FOUR – COPYRIGHT INFRINGEMENT

43. ScanSafe repeats and realleges the allegations of paragraphs 1 through 42 as if set forth herein.

44. This claim arises under the copyright laws of the United States, Title 17, United States Code, §§ 101 *et seq.*, and is to remedy acts of copyright infringement.

45. MessageLabs and Mr. White had access to copyrighted technical manuals and user interface pertaining to the Web Security Service.

46. The Defendants have copied in substantial part, the copyrighted technical manuals and user interface containing ScanSafe know how pertaining to implementing the Web Security Service.

47. Defendants have wrongfully profited from their acts of copyright infringement, and their unlawful acts have damaged ScanSafe in an amount to be proved at time of trial.

48. Defendants' acts of copyright infringement are irreparably harming ScanSafe and its competitive advantage in the marketplace and, thus, should be enjoined.

## COUNT FIVE – FEDERAL UNFAIR COMPETITION

49. ScanSafe repeats and realleges the allegations of paragraphs 1 through 48 as if set forth herein.

50. This claim arises under the Lanham Act, Title 15, United States Code, §§ 1051 *et seq.*, and is to remedy acts of unfair competition and false advertising under 15 U.S.C. § 1125(a).

51. MessageLabs' false and deceptive claims regarding the Version 2 service and ScanSafe's Web Security Service constitutes acts of unfair competition and false advertising.

52. MessageLabs' wrongful acts of unfair competition and false advertising were malicious, willful, and deliberate, and were carried on in willful, conscious, and reckless

disregard of ScanSafe's rights. ScanSafe is therefore entitled to enhanced damages and attorney fees under the federal Lanham Act.

53. MessageLabs has wrongfully profited from its acts of unfair competition, and its unlawful acts have damaged ScanSafe in an amount to be proven at time of trial.

54. MessageLabs' acts of unfair competition are irreparably harming ScanSafe and its competitive advantage in the marketplace and, thus, should be enjoined.

## COUNT SIX – DELAWARE DECEPTIVE TRADE PRACTICE ACT

55. ScanSafe repeats and realleges the allegations of paragraphs 1 through 54 as if set forth herein.

56. This claim arises under the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531, *et seq.*

57. MessageLabs has engaged and continues to engage in deceptive and misleading acts, as identified above, which have materially injured and continue to injure the citizens of the State of Delaware.

58. MessageLabs has engaged and continues to engage in deceptive and misleading acts that have materially injured and continue to injure ScanSafe's business, reputation, and good will.

59. MessageLabs has wrongfully profited from its acts of unfair competition, and its unlawful acts have damaged ScanSafe in an amount to be proven at time of trial.

60. MessageLabs has engaged and continues to engage in this activity knowingly and willfully and ScanSafe is therefore entitled to recover costs and attorney fees under 6 Del. C. § 2533.

61. MessageLabs' acts of unfair competition are irreparably harming ScanSafe and its competitive advantage in the marketplace and, thus, should be enjoined.

DB02:5490478.1                                                                                                      065371.1001

**WHEREFORE**, ScanSafe, Inc. and ScanSafe, Ltd. request a judgment as follows:

A.  An Order that Defendant MessageLabs, its officers, directors, affiliates, agents, servants, employees and attorneys, Benjamin White and all those persons in active concert or participation with Defendants, be enjoined from:

(1) using, copying, or distributing ScanSafe's Web Security Service, or any derivative work based thereupon, and from preparing or authorizing the preparation by others of any work containing, incorporating, or based on any ScanSafe copyrighted work, absent ScanSafe's express permission;

(2) exploiting, distributing, publishing, selling, or offering for sale any material that makes use of or incorporates any portion of aspect of the ScanSafe Web Security Service, absent ScanSafe's express permission; or

(3) inducing, encouraging, aiding, abetting or contributing to any of the aforesaid acts by any other party;

B.  Order that Defendants be required to retrieve and destroy all copies of any derivative works or materials (including without limitation all proposals, training manuals, surveys, assessments, reports, and presentations) from its clients, resellers and partners and its own various divisions, subsidiaries, and operating units, and to notify such clients, divisions, subsidiaries, and operating units that any copies of, or derivative works based upon, the ScanSafe Web Security Service were unauthorized;

C.  Order that in accordance with Title 17, United States Code, § 503, all materials infringing any ScanSafe copyright (including without limitation all proposals, training manuals, surveys, assessments, and presentations), and any and all materials by means of which such

copies may be reproduced (including electronic means and electronic files), and which are in the possession, custody or control of Defendants (including any divisions, subsidiaries, or operating units) or their clients, be impounded by the Court during the pendency of this action, and thereafter, at the option of ScanSafe, be either destroyed or delivered up to ScanSafe;

D.  Order that, pursuant to Title 17, United States Code, § 504, Defendants be required to account and pay over to ScanSafe all gains, profits, and advantages derived by it from its infringement of ScanSafe copyrights, and, in addition, the damages that ScanSafe has sustained by reason of Defendants' infringement of ScanSafe copyrights, together with legal interest calculated from the appropriate date of accrual;

E.  Order that, pursuant to Title 17, United States Code, § 505, Defendants be required to pay to ScanSafe its costs and disbursements in connection with this action;

F.  Order that, pursuant to Title 15, United States Code, § 1117, MessageLabs be required to account and pay over to ScanSafe three times all gains, profits, and advantages derived by it from its acts of unfair competition, and, in addition, three times the damages that ScanSafe has sustained by reason of MessageLabs acts of unfair competition, together with legal interest calculated from the appropriate date of accrual;

G.  Order that, pursuant to Title 17, United States Code, § 1117, MessageLabs be required to pay to ScanSafe its costs and disbursements in connection with this action, including all reasonable attorney fees;

H.  Order that, pursuant to 6 Del. C. § 2533, MessageLabs be assessed and required to pay treble damages to ScanSafe in an amount to be determined at trial based on MessageLabs' acts of deceptive trade practices;

DB02:5490478.1    065371.1001

    I.    Order that, a constructive trust be created for ScanSafe of any profits earned by Defendants by virtue of Benjamin White's misappropriation of ScanSafe's corporate opportunity and by his breach of his duty of loyalty to the corporation;

    J.    Order Benjamin White to pay personally the profits ScanSafe has lost and will lose as a result of White's breaches of fiduciary duty;

    K.    Order Benjamin White to pay personally the profits ScanSafe has lost and will lose as a result of White's usurpation of corporate opportunity; and

    L.    Award ScanSafe such further relief as this Court or jury may deem just and equitable.

## JURY TRIAL DEMAND

ScanSafe hereby demands a trial by jury on all issues so triable that are presented in this lawsuit.

Respectfully submitted,

OF COUNSEL:

James E. Rosini
Michelle M. Marsh
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200

Eric C. Kane
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

Dated: August 30, 2006

John W. Shaw (No. 3362)
Christian Douglas Wright (No. 3554)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
*jshaw@ycst.com*

*Attorneys for ScanSafe, Inc. and ScanSafe Ltd.*

JS 44 (Rev. 11/04)             **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
SCANSAFE, INC. and SCANSAFE LTD.

(b) County of Residence of First Listed Plaintiff: New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
John W. Shaw (No. 3362)
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor, Wilmington, DE 19801

### DEFENDANTS
MESSAGELABS GROUP LTD., MESSAGELABS INC., and BENJAMIN WHITE

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☑ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)
- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 U.S.C. §§ 101 et seq.; 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1367
Brief description of cause:
Cause of action for copyright infringement, unfair competition, false advertising, deceptive trade practices, and breaches of fiduciary duty.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 08/30/06
SIGNATURE OF ATTORNEY OF RECORD: Christian Douglas Wright

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.  **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
    Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 06 - 533

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF __3__ COPIES OF AO FORM 85.

__8/30/06__  
(Date forms issued)

(Signature of Party or their Representative)

FRANK JOYCE / PARCELS INC.  
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action